IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

FELISA RUIZ,                          )
                                      )
                    Plaintiff,        )
                                      )
v.                                    )        Case No. 07-0199-CV-W-SWH
                                      )
JOHN E. POTTER,                       )
Postmaster General,                   )
                                      )
                    Defendant.        )


## ORDER

## I.  BACKGROUND

Plaintiff, a former employee of the United States Postal Service, filed a five-count complaint alleging sex, age and disability discrimination (Counts I through III), breach of contract (Count IV) and hostile work environment (Count V[1]).  (Doc. #1)  The defendant sought summary judgment, doc. #14, and the Court held a hearing on the motion.  As a result of the discussion at that hearing, defendant filed an Amended Motion for Summary Judgment, doc. #25, setting forth additional facts in support of the summary judgment motion.  In response to the amended motion for summary judgment, plaintiff conceded her claims of age and sex discrimination.  (Doc. #28)  Thus, defendant's summary judgment and amended summary judgment motions will be considered as to the three remaining claims:  disability discrimination (Count III); breach of contract (Count IV); and hostile work environment (Count V).

---

[1]Plaintiff referred to the last count of her Complaint as Count II, but the Court has renumbered it to avoid confusion as plaintiff's claim for age discrimination was also styled Count II.

Plaintiff began working for the United States Postal Service in 1978. (Doc. #1, ¶ 5) In 1996, plaintiff became a receptionist at the main post office through a rehabilitation assignment. (Id.) On April 4, 2005, the main post office was relocated. (Doc. #1, ¶ 5) In March of 2005, prior to the relocation of the main post office, plaintiff was advised that she was being reassigned to the office at 1700 Cleveland, Kansas City, Missouri. (Doc. #1, ¶ 7) Plaintiff contends that her transfer to this location prevented her from keeping doctor appointments, and thus, caused undue hardship. (Doc. 1 ¶ 8) She also alleged that the bus stop for the new location was approximately three blocks from work requiring her to walk an additional distance. (Id.) Plaintiff contends she applied for her job back, had the number one rating, but was not chosen for the job. (Doc. #1, ¶ 9) Plaintiff further alleges that as the result of an understanding between the USPS and the Union, she agreed to retire; however, she is now being denied retirement benefits in retaliation for her 30-year employment history. (Doc. # 1, ¶¶ 14 and 15)

## II.  STANDARDS FOR EVALUATING A MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is granted when the pleadings and evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The nonmoving party may not rest upon allegations or general denials, but must come forward with specific facts to prove that a genuine issue for trial exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In doing so, all evidence and inferences therefrom are viewed in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

## III.  UNDISPUTED FACTS

2

The following facts are uncontroverted unless otherwise noted:

1.  Plaintiff is a-Mexican American female, and her date of birth is October 12, 1925. She has an alleged disability (carpal tunnel syndrome and psoriasis) and prior EEO activity. (Defendant's Fact #1)

2.  In 2005, plaintiff was a full-time clerk, level PS-05, Step O, assigned to a limited duty position as a receptionist in the main Post Office. (Defendant's Fact #2)

3.  Plaintiff's medical restrictions include: no repetitive grasping and release activities and no lifting over ten pounds. Plaintiff is able to perform receptionist duties. (Defendant's Fact #3)

4.  On January 25, 1996, plaintiff accepted a limited duty assignment. (Doc. #14-3, p. 2) The job description for this assignment included the following:

    > Responsible for all paperwork and activity related to the Human Resources timekeeping function. Greet and direct customer inquiries to the appropriate office(s). After briefing by each functional area, will be able to thoroughly assist customers to the correct office(s) in a courteous and professional manner. Answer phone in a courteous and professional manner, as stipulated in the Employees and Labor Relations Manual (ELM) 666.1. Coordinate copying needs of Human Resources with outside sources (i.e. GSA, Material Distribution Center, Rockhill Office Supplies, etc. ...) in a timely and accurate manner. Coordinate supplies for Human Resources on a weekly basis. Required to wear a Window Clerk Uniform, while working in this position. No typing requirement.

    > Report directly to the Confidential Secretary, Human resources, Mid-America District, Main Post Office, Kansas City, MO.

    (Doc. #14-3 at 4)

5.  Plaintiff was allowed time off to go to the University of Kansas Medical Center for treatment for her psoriasis. ( Plaintiff's Response to Defendant's Fact #3)

6.  In the spring of 2005, the main Post Office on Pershing Road was closed and the facility was turned over to the IRS. USPS administrative functions were moved to a smaller facility adjacent to Union Station across Pershing Road from the former main Post Office. Distribution functions previously performed at the main Post Office had already been moved to the Kansas City Processing and Distribution Center at 1700 Cleveland, Kansas City, Missouri. (Defendant's Fact #4)

7.  Ms. Ruiz's position as a limited duty receptionist was eliminated in the move. The

3

Postal Service offered Ruiz a limited duty receptionist position at the Processing and Distribution Center, 1700 Cleveland, which is approximately 3.7 miles from the former Pershing Road facility. (Defendant's Fact #5)

Plaintiff disputes this fact stating: "Plaintiff denies the allegations contained in paragraph 5 because there was a bidding process for the position of general clerk. The Postal Service eventually awarded the position to a Mrs. J.K. Popp." (Plaintiff's Response to Defendant's Fact #5) It is unclear how plaintiff's statement controverts Defendant's Fact #5. However, from other arguments in the briefing, plaintiff may be contending that her limited duty position was the same as the position of general clerk at the new Pershing Road facility. Plaintiff seems to suggest that defendant erroneously required plaintiff to bid for the new position and then awarded it to another.

In support of Defendant's Fact #5, defendant refers to Exhibit 3, the August 30, 2005, affidavit of Dennis Teffner, Manager of Human Resources for the Mid America District of the Postal Service. Mr. Teffner's affidavit which was provided as part of the EEOC investigation stated, in part:

> ... Upon touring the new District office location before final construction was completed it was evident that the new security for the building as well as the manner and location of the visitor entrance would require some type of changes. Since the General Clerk position was located within several feet of the visitor entrance it made perfect sense to assign those duties to that position. In addition the Personnel Operation is being phased out and it was necessary to have the Kansas City, MO Post Office take on some of the additional clerical duties with regard to hiring their new employees. It was decided these duties would also be attached to the General Clerk position. After meeting with the APWU it was determined that the change in duties would require the General Clerk position to be abolished and reposted as a Senior Qualified Position. This was done and the Senior Qualified Clerk who had more seniority than the Complainant was awarded the position as required by the national agreement.

(Doc. #14-4 at 1) Exhibit 10 is the job description for the General Clerk position which was to be located at the new facility on Pershing. It listed eight categories of duties and responsibilities. Providing routine information to the public concerning postal rates, mailing information, etc. when no other source of information is available was only one of the eight listed categories of duties. The duties included: maintaining information books, manuals, transportation schedules; adjusts minor service complaints; verifies time records; prepares holiday, compensatory time and daily work schedules, and maintains necessary records for leave assignments; distributes mail; and corrects mailing lists. Another category provided: "In addition, may perform but not for substantial periods of time, any of the following duties:

4

types correspondence and memoranda from rough drafts, general information, etc.; operates copy machines; files copies of correspondence; performs duties at a public window."

The evidence supports Defendant's Fact #5. The clerk position at the new facility was substantially different than the limited duty clerk/receptionist position plaintiff held at the old office on Pershing. The selection method for general clerk position at the new Pershing Road facility was posted as "Senior Qualified." (Defendant's Ex. #10, doc. #14-11)

8.  On March 30, 2005, plaintiff made initial contact with the EEO office for the Postal Service. (Defendant's Fact #28)

9.  Plaintiff accepted the new limited duty position at the Processing and Distribution Center under protest, but failed to show up for work. (Defendant's Fact #6)

    Plaintiff disputes this fact arguing that she went to the 300 Pershing Road location where she assumed and thought her position had moved. She also argues that the Postal Service did not properly sign and document her transfer orders. Plaintiff, however, provides no evidence in support.

    The evidence cited by the defendant includes the offer of modified assignment indicating the location of the job was 1700 Cleveland. At the bottom of the form, the box "I accept" was checked along with the statement: "I accept under protest as duties are still at 300 W. Pershing ...." (Defendant's Ex. #5, doc. #14-6) Defendant also relies on Exhibit 6, a letter to Ms. Ruiz, dated April 15, 2005, from the Manager of Distributions Operations at 1700 Cleveland, stating that Ruiz had been absent since April 4, 2005. Thus, the only evidence offered supports Defendant's Fact #6.

10. On April 11, 2005, plaintiff requested further accommodations from the District Reasonable Accommodation Committee (DRAC). Plaintiff requested:

    •   A change in positions whereby Denise Brownlee would not be her supervisor.
    •   A receptionist position located at the District Office.
    •   Flexibility in assigned hours due to transportation concerns.

    (Defendant's Fact #6; Defendant's Ex. #8, doc. #14-9)

11. Plaintiff met with the DRAC on April 25, 2005. In response to the accommodation request, the DRAC determined that Denise Brownlee would not be the plaintiff's supervisor in the position she accepted under protest in March 2005. (Defendant's Fact #7; Defendant's Ex. #8, doc #14-9)

5

12.    The DRAC also determined that there was not a vacant position for a receptionist at the District Office and noted that the plaintiff had been accommodated with receptionist work at the nearby Kansas City, Missouri Processing and Distribution Center facility.  (Defendant's Fact #8)

13.    The DRAC indicated to plaintiff that it would accommodate her need for flexibility in reporting time in order to meet her guardian/caretaker duties.  (Defendant's Fact #9)

14.    On April 29, 2005, plaintiff had an initial interview with the EEO office for the postal service.  She received a Notice of Right to File an Administrative EEO Complaint on May 3, 2005.  The EEO Dispute Resolution Specialist (DRS) Inquiry Report sets forth the basis for alleged discrimination against Felisa Ruiz.  The report indicated that Ms. Ruiz articulated discrimination on the base of her race (Hispanic); age (date of birth 10/12/1925); physical disability (psoriasis and carpal tunnel) and retaliation.  Plaintiff made the following claims of discrimination during EEO counseling:

      1.    On April 25, 2005, she met with the District Regional Accommodations Committee (D.R.A.C.) and has not yet received a response to her request for accommodation.

      2.    On March 30, 2005 she was not given tickets for an employee party.

      3.    On March 28, 2005 she was handed Form 2499X, Offer of Modified Assignment (limited duty) to work at KCMO P & D C, rather than be moved to the new building.  She states that she signed under duress.

      4.    On March 25, 2005 she was required to report arrival and departure from her therapy sessions.

   (Defendant's Fact #28)

15.    On May 18, 2005, plaintiff filed her formal EEO complaint with the Postal Service raising the issues she had brought to the attention of the EEO counselor as set forth in Undisputed Fact #14, supra.  (Defendant's Fact #29)

16.    On June 8, 2005, plaintiff sought to add a claim that on June 1, 2005, she was denied reasonable accommodation by the DRAC.  (Defendant's Fact #30)

17.    On August 31, 2005, plaintiff sought to add another claim: that on August 30, 2005, she discovered she was not placed into the position for bid job number 8731680. (Defendant's Fact #31)

18.    On August 4, 2005, Senior EEO Complaints Investigator Geri Carldwell dismissed

6

issues one through four pursuant to 29 C.F.R. § 1614.107(a) for failing to state a claim under §§ 1614.103 or 1614.106(a).  (Defendant's Fact #32)

19.    The Postal Service accepted for investigation plaintiff's claim that she was denied reasonable accommodation on June 1, 2005, and that she was not placed into the position for bid job number 8731680.  (Defendant's Fact #33)

20.    Ms. Ruiz did not seek EEO counseling or amend her pending EEO complaint to allege that her removal from the Postal Service was discriminatory.  Instead, after the issuance of the Notice of Removal, Ruiz's collective bargaining representative, the American Postal Workers' Union, AFL, CIO, submitted a contractual grievance appealing her removal.  (Defendant's Fact #34)

21.    The posting for bid job number 8731680 (general clerk) specifically indicated that the position would be filled by the senior qualified applicant.  (Defendant's Fact #17; Defendant's Ex. 10, doc. #14-11)

22.    Position number 8731680 is a senior qualified position.  (Defendant's Fact #20)

23.    Ms. Ruiz was a clerk and a member of the APWU.  As such, she was subject to the terms of the agreement between the United States Postal Service and the American Postal Workers Union.  The version of the agreement in effect at the time of the selection at issue provided that seniority was determined as follows:

> This seniority determines the relative standing among full-time employees and part-time regular employees.  It begins on the date of entry into the Clerk Craft in an installation and continues to accrue as long as service is uninterrupted in the Clerk Craft and in the same installation, except as otherwise specifically provided for.

> Article 37.2.D, agreement between the USPS and the APWU.

(Defendant's Fact #36)

24.    The date an employee enters into the craft, in this case the Clerk Craft, is the date of the employee's seniority.  Ms. Ruiz's official personnel file confirms that her seniority date is August 16, 1978.  On that date, she transferred from the Environmental Protection Agency to the Postal Service as a Clerk.  (Defendant's Fact #37)

Plaintiff responded to Defendant's Fact #37 as follows:  "Plaintiff, upon review of the job announcement, does not deny the allegations contained in paragraphs 36 and 37."

7

(Doc. #28 at 3)[2]

25.    The successful bidder, J.K. Popp, has a clerk craft seniority date of July 5, 1978.  Ms. Popp is senior to plaintiff by approximately five weeks.  (Defendant's Fact #19)

Plaintiff disputed this fact contending that plaintiff was the most senior qualified for the job.  (Doc. #17, ¶ 17)  Plaintiff cites for this opposition, Plaintiff's Exhibit 2, the Statement of Prior Federal Civilian and Military Service for Ms. Ruiz.  However, as discussed above, that document does not provide the seniority date for purposes of the Clerk Craft which is governed by a collective bargaining agreement that establishes that date.  Moreover, plaintiff disputed this fact prior to conceding in a later brief that her seniority date was August 16, 1978.

26.    Because J.K. Popp is senior to plaintiff, she was properly awarded position number 8731680 pursuant to the collective bargaining agreement.  (Defendant's Fact #21)

Plaintiff disputed this fact asserting that she was the most senior qualified person for that job.  (Doc. #17, ¶ 17)

27.    Defendant's Exhibit 11 is a printout of a Maintain Posting Display.  This document lists all bidders for the General Clerk position at issue in order of their seniority.  The first column is simply a number representing their ranking in regard to seniority.  The second column lists the employees' social security numbers.  The third column is last name, first initial, middle initial.  The fourth column displays the priority choice the employee selected for this position.  The fifth column displays the employees' seniority dates.  The sixth and last column indicates whether the employee is eligible, successful on this bid, or successful on another bid.  Defendant's Exhibit 11 shows that Ms. Popp had the earliest seniority date and, therefore, was the successful bidder for this position.  It also shows that plaintiff, while ranked second in seniority, was not the successful bidder for this position.  (Defendant's Fact #38)

28.    Defendant's Exhibit 12 is an Abbreviated Award Notice.  It shows that the General Clerk position at issue was awarded to Ms. Popp effective July 23, 2005, and that Ms. Popp's seniority date was July 5, 1978.  (Defendant's Fact #39)

In responding to Defendant's Facts #38 and #39, plaintiff "suggests" these paragraphs

_____

[2]However, in responding to a similar fact in the original motion for summary judgment, plaintiff disputed that her seniority date was August 16, 1978.  (See doc. #17 at 4)  If a dispute still remains over  Ms. Ruiz's seniority date for purposes of bidding on a position in the Clerk Craft, it is undisputed that the agreement between the USPS and the APWU governs and provides in plaintiff's case for a seniority date of August 16, 1978, the date she first entered the Clerk Craft.

8

"reveal a decision to select the successful candidate was based on something other than qualifications or 'best qualified.' Plaintiff suggests that she had been in the position for approximately nine (9) years and hand [sic] not been removed because of poor work performance. While Plaintiff will agree that she and her supervisor had disputes, none of the allegations involving Plaintiff's work performance were ever substantiated." (Doc. #28 at 4)

Plaintiff offers no evidence to controvert the requirement that the bidding on the Craft Clerk position was required to be in accordance with the collective bargaining agreement.

29. Plaintiff's Exhibit 1 shows that Ms. Ruiz bid for the position of General Clerk, job slot 8731680, posting number 05-05. It shows that the posting was open from June 21, 2005 to July 7, 2005. It shows that this position was Ms. Ruiz's first choice and that she was eligible. It also shows that this job was "awarded," but it does not provide the name of the employee to whom the job was awarded. (Defendant's Fact #35)

Plaintiff admits she bid for the general clerk position. However, plaintiff contends the general clerk position is the same position she previously held at the main Post Office. (Doc. #28 ¶ 10) Based upon Undisputed Fact #7, supra, it is clear that the job plaintiff held and the one which was posted were significantly different.

30. On September 7, 2005, the Postal Service sent Ms. Ruiz a Notice of Removal charging her with failure to meet the attendance requirements of her position. (Defendant's Fact #22)

Plaintiff admits receiving the notice, but contends the attendance requirements were unreasonable. (Doc. #17, ¶ 19)

31. The Notice of Removal followed the Notice of Absence Inquiries sent to Ms. Ruiz in April and June. Ruiz had been absent from duty since April 4, 2005. (Defendant's Fact #23)

32. On September 11, 2006, the grievance was settled with the Postal Service agreeing to hold Ms. Ruiz's removal in abeyance as long as Ms. Ruiz applied for retirement within ten days. The Postal Service also paid Ms. Ruiz $4,500. (Defendant's Fact #25)

33. Ms. Ruiz did not apply for retirement as agreed. Therefore, on November 6, 2006, Jerome Barris, Labor Relations Specialist, submitted a Request for Separation Action to the Postal Service Human Resources Shared Service Center. (Defendant's Fact #26)

34. On November 17, 2006, Ms. Ruiz was removed from the employ of the Postal Service effective October 6, 2006. (Defendant's Fact #27)

9

35.     On May 9, 2005, a Second Amended Complaint was filed in a purported class action case entitled <u>Janice Muhammad, et al. v. John E. Potter</u>, Case Number 04-CV-00628-ODS.  In this case, several plaintiffs sought to represent a class of disabled Postal Service employees against the Postmaster General alleging that the Postal Service maintained and continues to maintain discriminatory policies, practices and customs of disability discrimination, including but not limited to promotional, bidding and pay practices.  (Defendant's Fact #40)

36.     In April of 2008, the named plaintiffs and 33 potential class members in <u>Muhammad, et al. v. Potter</u> agreed to settle the action with the United States Postal Service and entered into a Stipulation for Compromise Agreement and Settlement Agreement which was signed by counsel for the plaintiffs and the 33 potential class members and counsel for the Postal Service.  (Defendant's Fact #41)

37.     As a part of the Settlement Agreement, the plaintiffs and potential class members agreed to receive a gross settlement payment of $71,000 in back pay.  Paragraph 8 of the Settlement Agreement provided as follows:

> The Plaintiffs and Potential Class Members do hereby agree to accept the sum set forth in paragraph 7 of this Settlement Agreement, and Schedule A, in full settlement and satisfaction of any and all claims, complaints, administrative complaints, grievances and causes of action of whatsoever kind and nature which they may have or hereafter acquire against the Postal Service, its officers, executives, managers, agents, supervisors, employees, and former employees either in their official or individual capacities, on account of the same subject matter that gave rise to their underlying discrimination claims in the *Cera* and *Muhammad* class actions referenced in paragraph 1 above.  The Plaintiffs and Potential Class Members understand that by accepting the Payments and signing the attached release and certification they each agree to permanently waive any claims they may have against the Postal Service, its officers, executives, agents, supervisors, employees, and former employees either in their official or individual capacities in the *Cera* or *Muhammad* class action matters for front pay, back pay, compensatory damages, interest, attorneys' fees and/or costs.

> If any labor union has filed, or files in the future, any grievance(s) and/or arbitration(s) relating to any of the claims alleged in the *Muhammad* or *Cera* class actions on behalf of any Plaintiff or Potential Class Member, the Plaintiff or Potential Class Member will instruct the union to withdraw any such grievance(s) or arbitrations pending at any level of the grievance-arbitration process.  In the event that any labor union disregards their instructions, then the Plaintiff or Potential Class member shall refuse to accept any remuneration or relief which may be ordered as a result of any such grievance.  In the event that any Plaintiff or Potential Class Member

10

nonetheless receives such remuneration, they shall refund that remuneration to the Postal Service within fourteen (14) days of the receipt of such benefits. The term "remuneration" shall include, but be not limited to, pay of any kind, annual leave and sick leave. The term "relief" shall include, but be not limited to, restoration of employment with the Postal Service.

(Defendant's Ex. 26 at 6 and 7)

38. Ms. Ruiz contracted with plaintiff's counsel in <u>Muhammad, et al. v. Potter</u> as a potential class member and received payment in accordance with the Settlement Agreement. She signed a release consistent with the terms of the Settlement Agreement on March 25, 2008. (Defendant's Ex. 20, doc. #14-21). The release states in pertinent part:

> I, Felisa Ruiz, release, waive, and forever discharge the United States Postal Service, its officers, executives, managers, agents, supervisors, employees, and former employees, either in their official or individual capacities, of and from any and all claims, demands, or causes of action of any kind or description, whether known or unknown, arising directly or indirectly from any act, omission, or fault occurring before the date of the Settlement Agreement that was asserted or could have been asserted in the class actions captioned as *Muhammad v. United States*, No. 04-CV-00628-ODS and *Maria Cera v. John E. Potter, Postmaster General, EEOC Case No. 280-2006-00035X, Agency No. 1E-641-0021-05*.

(Defendant's Ex. 20, doc. #14-21)

## IV. <u>DISCUSSION</u>

### A. <u>DISABILITY DISCRIMINATION – COUNT III</u>

Count III, entitled "Unlawful Discrimination Because of Disability," alleges in pertinent part:

26. Plaintiff was wrongfully discriminated in her employment because of her disability and was subjected to constant humiliation and criticism from fellow employees and was subjected to a hostile work environment all in violation of Title VII of the Civil Rights Act of 1964, as amended. Plaintiff's work excuses were refused on a regular basis. Plaintiff's health condition was not considered in the job move whereby as an 80 year old employee she would have to walk 3 blocks to her job.

27. Plaintiff is a female of the Hispanic American race and was treated differently from the other employees at the USPS. Plaintiff's job was taken from her. Plaintiff's disability of psoriasis was a cause of concern. Plaintiff was subjected to different treatment because of her disability. Plaintiff was constantly put on write ups

11

and discipline and had her FMLA paper work rejected regularly by her immediate supervisor. Plaintiff's treating doctor indicated to everyone that stress was [a] contributing factor to the outbreak of psoriasis. Despite knowing this information, Defendant USPS continued to work at raising the level of stress in her work through the conduct of management and her immediate supervisor.

28. The unlawful employment practices alleged herein were knowingly and intentionally committed against Plaintiff. Defendant's management employees, accepted and adopted the conduct of the owners and managers of the USPS. Defendant's retirement benefits were denied unlawfully.

(Complaint, doc. #1)

Plaintiff initially alleges that jurisdiction is proper pursuant to Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; 42 U.S.C. Section 2000e, et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. Section 621 and in retaliation for protected activity. (Doc. #1, ¶ 1) Plaintiff specifically sets forth the jurisdictional basis for Count III as "Title VII of the Civil Rights Act of 1964, as amended." (Doc. #1, ¶ 26)

However, the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., is the sole remedy for federal employees claiming disability discrimination. See Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005), and cases cited therein. The Rehabilitation Act extends the remedies, procedures and rights available under Title VII, 42 U.S.C. § 2000e-16, to federal employees with disability discrimination claims. See 29 U.S.C. § 794(a).

1. Failure to Exhaust Administrative Remedies

The government's position is that before federal employees may bring an employment discrimination claim under the Rehabilitation Act, they must exhaust administrative remedies. (Doc. #14 at 20) Defendant contends that the only claims which plaintiff exhausted were her formal grievance claims made on May 18, 2005, as subsequently amended alleging:

1. On April 25, 2005, she met with the District Regional Accommodations

12

Committee (D.R.A.C.) and has not yet received a response to her request for accommodation.

2.     On March 30, 2005 she was not given tickets for an employee party.

3.     On March 28, 2005 she was handed Form 2499X, Offer of Modified Assignment (limited duty) to work at KCMO P & D C, rather than be moved to the new building.  She states that she signed under duress.

4.     On March 25, 2005 she was required to report arrival and departure from her therapy sessions.

5.     On June 1, 2005, she was denied reasonable accommodation.

6.     On August 30, 2005, she discovered she was not placed into the position for bid job number 8731680.

(Undisputed Facts #14, #16 and #17, _supra_)  Thus, defendant's position is that the claims set forth in Count III of the Complaint that plaintiff was discriminated against because of her disability based upon a hostile work environment (¶ 26), given write ups and discipline (¶ 27) and denied retirement benefits (¶ 28) must be dismissed for her failure to raise these issues administratively.

Plaintiff's opposition to defendant's initial motion for summary judgment contained no response to these legal arguments. (See Doc. #17)  During argument on this issue, when plaintiff's counsel was asked if he had "an argument as to why she either did exhaust or didn't need to," he replied, "I'd have to look at it.  I can't recall currently."  (Doc. # 23 at 28)  In Defendant's Amended Motion for Summary Judgment, defense counsel set forth in more detail the facts upon which defendant based its failure to exhaust arguments.  (Doc. #25, Defendant's Facts #28 through #34)  In her suggestions in opposition to the amended motion for summary judgment, plaintiff admitted each of these facts.  (See doc. #28 at 3)  In her briefing opposing the amended summary judgment motion, plaintiff did not address the exhaustion issue.

It is undisputed in the case law that exhaustion of administrative remedies is a jurisdictional

13

prerequisite to bringing an action in federal court under the Rehabilitation Act.  See Mayes v. Potter, 418 F.Supp.2d 1235, 1238 (D. Colo. 2006).  See also Roman-Martinez v. Runyon, 100 F.3d 213, 216 (1st Cir. 1996); McAlister v. Sec'y of Dep't of Health & Human Servs., 900 F.2d 157, 158 (8th Cir. 1990).  The exhaustion requirements for claims of discrimination under the Rehabilitation Act are set forth in 29 C.F.R. § 1614.101, et seq. and require that the complaint filed administratively be "sufficiently precise" so as "to describe generally the action(s) or practices(s) that form the basis of the complaint."  See 29 C.F.R. § 1614.106(c).  Judged by these standards, the Court finds that plaintiff failed to exhaust her administrative remedies as to her claims in Count III that she was subject to a hostile work environment, disparate treatment and lost retirement benefits on the basis of her disability.

Plaintiff also alleged in Count III that "[p]laintiff's health condition was not considered in the job move whereby as an 80 year old employee she would have to walk 3 blocks to her job" (¶ 26) and "[p]laintiff's job was taken from her" (¶ 27).   While plaintiff did include in her amended administrative claim a complaint concerning her failure to be awarded bid job number 8731680, see Undisputed Fact #17, supra, Count III does not appear to set forth a claim of discrimination based upon her failure to receive this job.  In argument and briefing, plaintiff has complained that her job was moved to 1700 Cleveland and that she was not awarded bid job number 8731680.  However, the former complaint was not exhausted administratively and the latter was not pled in Count III of her Complaint.

Even if plaintiff's administrative complaint that she was not awarded bid job number 8731680 could be liberally construed to encompass the claim that she was relocated to 1700 Cleveland and if Count III could be interpreted as raising those claims, plaintiff could still not prevail on her disability

14

claim for the following reasons.[3]

        2.    <u>Disparate Treatment Claim</u>

Disparate treatment claims under the Rehabilitation Act are analyzed under the <u>McDonnell Douglas</u> burden shifting analysis. <u>See</u> <u>Peebles v. Potter</u>, 354 F.3d 761, 766 (8th Cir. 2004). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. <u>See Hill v. St. Louis Univ.</u>, 123 F.3d 1114, 1119 (8th Cir. 1997). If the plaintiff is successful in establishing a prima facie case, a rebuttable presumption of discrimination arises. <u>Id</u>. The burden then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. <u>Id</u>. Once the defendant articulates such a reason, the presumption of discrimination disappears entirely and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus. <u>Id</u>. At all times, the plaintiff retains the ultimate burden of proving discrimination. <u>Id</u>.

To establish a prima facie case of disparate treatment, a plaintiff must show that: (1) she is a member of a protected class; (2) she was meeting the legitimate expectations of her duties; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination because similarly situated employees, who were not members of the protected group, were treated differently. <u>See</u> <u>Gilooly v. Mo. Dep't of Health & Senior Servs.</u>, 421 F.3d 734, 738-39 (8th Cir. 2005).

Plaintiff Ruiz cannot establish a prima facia case that the relocation of her job duties to 1700

---

[3]Because plaintiff did not properly raise and plead her complaints that her job was improperly relocated to 1700 Cleveland or that she was not awarded bid job number 8731680, it is unclear whether she was claiming disparate treatment or failure to offer a reasonable accommodation. Thus, both claims will be addressed.

Cleveland constituted disability discrimination based on a theory of disparate treatment for a variety of reasons.  Not only is there no evidence that similarly situated employees, who were not members of the protected group, were treated differently, but there is no evidence of an adverse job action.  Generally, conduct constitutes an adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998).  <u>See also</u> <u>McKay v. Johanns</u>, 265 Fed. Appx. 267, 269 (5th Cir. 2008)(change in location of work station from one area of office to another more isolated cramped area did not constitute an adverse employment action under Rehabilitation Act where there was no change in compensation, benefits or responsibilities).

In the circumstances of this case, it is undisputed that the location where plaintiff worked was closing.  Plaintiff was offered and accepted the same position at a location 3.7 miles from her original work station.  Based on the undisputed facts before the Court, this action does not constitute an adverse employment action even though plaintiff alleged that the new location was three blocks further from the bus station.

        3.      <u>Failure to Reasonably Accommodate Plaintiff's Disability</u>

Plaintiff argues that defendant failed to provide reasonable accommodations for her disability.  Defendant contends it accommodated plaintiff's disability by providing her with a limited duty assignment following the closing of the main post office facility.

To establish a prima facie case for failure to accommodate under the Rehabilitation Act, a plaintiff must show that:  (1) she suffers from a disability within the meaning of the statute; (2) she is a qualified individual inasmuch as she is able to perform the essential functions of her job, with or

without reasonable accommodation; and (3) that, despite its knowledge of her disability, her employer did not offer a reasonable accommodation. See Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008).

Once the main post office was closed and plaintiff's limited duty position as the receptionist was abolished, defendant offered plaintiff a similar light duty position at a new facility which was approximately 3.7 miles from the former facility. (See Undisputed Fact #7, supra) Plaintiff disputes the fact that her position was abolished. Rather, she argues that her limited duty position was moved across the street to the building near Union Station. The problem with plaintiff's argument is that the general clerk position which moved across the street required skills that plaintiff would be unable to perform due to her disability—the job required lifting and grasping beyond plaintiff's medical restrictions, as well as computer skills and typing. (See Undisputed Fact #7; Defendant's Ex. 22 at 3)

Plaintiff requested three specific accommodations from the DRAC: (1) a change in positions whereby Denise Brownlee would not be her supervisor; (2) a receptionist position located at the District Office; and (3) flexibility in assigned hours due to transportation concerns. (See Undisputed Fact #10) The DRAC was able to provide the first and third of plaintiff's requests but did not have a vacant receptionist position at the District Office. (See Undisputed Facts #11 through #13) The general clerk position at the District Office was, as discussed previously, a seniority bid position. (See Undisputed Facts #21 through #28, supra)

In order for plaintiff to survive summary judgment, she must show that her requested accommodation was reasonable. See Peebles v. Potter, 354 F.3d 761, 768 (8th Cir. 2004). A reasonable accommodation is one that imposes no undue burden on the employer. Id. at 767. In U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002), the Supreme Court stated that the accommodation must

17

Case 4:07-cv-00199-SWH   Document 30   Filed 09/30/09   Page 17 of 25

seem "reasonable on its face, i.e., ordinarily or in the run of cases." Id. at 402.  In fact, the Barnett

case is almost identical to this case.[4]  In Barnett, the Court resolved the conflict between: "(1) the

interests of a disabled worker who seeks assignment to a particular position as a 'reasonable

accommodation,' and (2) the interests of other workers with superior rights to bid for the job under

an employer's seniority system." Id. at 393-94.  The Court concluded that ordinarily, the ADA does

not require an employer to assign a disabled employee to a particular position if another employee is

entitled to that position under the employer's established seniority system. Id. at 406.  Therefore, a

requested accommodation of that type would not be reasonable.  The Court went on to note, however,

that a plaintiff may show that special circumstances may warrant a finding that, despite the presence

of a seniority system, the requested accommodation may be reasonable under specific facts. Id. at 405.

Additionally, lower courts have held that collectively bargained seniority trumps the need for

reasonable accommodation in the context of the Rehabilitation Act.  See Barnett, 535 U.S. at 403

(citing Eckles v. Consol. Rail Corp., 94 F.3d 1041, 1047-48 (7th Cir. 1996); Shea v. Tisch, 870 F.2d

786, 790 (1st Cir. 1989); Carter v. Tisch, 822 F.2d 465, 469 (4th Cir. 1987); Jasany v. United States

Postal Serv., 755 F.2d 1244, 1251-52 (6th Cir. 1985)).

Plaintiff requested that she be given the receptionist/ limited duty  position at the District

Office rather than at the Cleveland location.  As previously discussed, the clerk position was a senior

qualified position under the union agreement.  Plaintiff was not the senior qualified employee entitled

to the  position.  In requesting that her job be located at 300 Pershing rather than 1700 Cleveland,

plaintiff does not argue that either her carpal tunnel syndrome or psoriasis affected in any way her

_____

[4]The Barnett case was brought under the Americans with Disabilities Act of 1990, 42
U.S.C. § 12101, et seq.

ability to walk to and from the bus stop or drive to either location. Rather, her complaint alleged that her health as "an 80 year old employee" should have been considered in determining if her job should be moved to a location three blocks from the bus stop. (Doc. #1, ¶ 26) However, plaintiff's claims under the Rehabilitation Act were premised on her allegedly disabling conditions of carpel tunnel syndrome and psoriasis, not her age. For all of these reasons, plaintiff cannot prevail on her claim that she was denied a reasonable accommodation for her disabilities.

    4.    <u>Failure to be Awarded Job Number 8731680</u>

In paragraph 14 of her Complaint, plaintiff alleges that "she had her job ended and forced to re-bid for the job. Although she was the number 1 applicant, she was denied that job for some unknown reason. ..." While Counts III, IV and V incorporate by reference paragraphs 1 through 16 of the Complaint, plaintiff does not specifically refer to her failure to obtain the job she bid for as part of her claims in Counts III, IV or V. However, defense counsel has assumed that plaintiff was alleging that she was not awarded the job for which she bid because of her age, sex[5] or disability. (<u>See</u> doc. #14 at 17) Without conceding that plaintiff has established a prima facia case of discrimination, defendant argues that plaintiff is not entitled to prevail on any claim that her failure to receive bid job number 8731680 constitutes discrimination. Defendant contends that it has offered a legitimate, non-discriminatory reason for its failure to awarded this job to plaintiff in accordance with the <u>McDonnell Douglas</u> rationale, described above.

It is undisputed that the position plaintiff bid for, but was not awarded, job number 8731680, was to be filled by the senior qualified applicant. (<u>See</u> Undisputed Facts #21 and #22, <u>supra</u>) It is also undisputed that seniority under the terms of the American Postal Workers Union "begins on the date

---

[5]As previously explained, plaintiff has conceded the age and sex discrimination claims.

of entry into the Clerk Craft in an installation and continues to accrue as long as service is uninterrupted in the Clerk Craft and in the same installation ..." (See Undisputed Fact #23, supra) Plaintiff entered the clerk craft on August 16, 1978. (See Undisputed Fact #24, supra) Although plaintiff initially disputed August 16, 1978 as her seniority date, plaintiff later admitted that this was her seniority date. (See Undisputed Fact #24, supra) Ms. Popp, the successful bidder for the position, has a clerk craft seniority date of July 5, 1978.[6] (See Undisputed Fact #25, supra) Defendant has articulated a legitimate non-discriminatory reason for failing to award plaintiff job number 8731680.

     5.    <u>Prior Settlement</u>

The government also contends that plaintiff's participation in and settlement of another action alleging disparate treatment based upon disabilities precludes her from pursuing this action. (See Undisputed Fact #37, supra) In settling that case, plaintiff signed a document releasing and forever discharging the United States Postal Service from "all claims" arising from any act "occurring before the date of the Settlement Agreement that was asserted or could have been asserted in the class actions ..." (See Undisputed Fact #38, supra) This release was signed in March of 2008. Thus, it would appear that plaintiff's claims of discrimination based on her disability as alleged in Counts III and V of the Complaint could have been raised in that action in which plaintiff and other employees sued the Postal Service alleging that their employer maintained discriminatory policies based on the plaintiffs' disabilities including, but not limited to, promotional, bidding and pay practices. The Court concludes that this prior settlement provides yet another reason as to why summary judgment must be granted on plaintiff's claims of disability discrimination.

---

[6]Even after acknowledging August 16, 1978, as her seniority date, plaintiff continued to dispute that Ms. Popp had a seniority date prior to hers. However, no evidence was offered by plaintiff in support of this claim.

B.     BREACH OF CONTRACT – COUNT  IV

Plaintiff alleges in Count IV that:

      31.     Plaintiff received a removal notice signed by Sylvester Black in November 2006. ...

      32.     The removal notice violates the retirement agreement entered into by the parties.

      33.     Defendant breached the retirement agreement and has failed to provide all necessary forms for Plaintiff to complete for her final retirement.  Additionally, Defendant, by filing the Removal Notice has successfully prevented Plaintiff from obtaining health insurance and life insurance for her and her son.  The annuity status is also very questionable given this latest Removal Notice signed by Mr. Black.

      34.     There was an agreement between Plaintiff, her union, and the Defendant USPS that she would retire in September, 2006 with all her benefits in place in 2005 remaining in existence.  The parties came to an understanding and based on that understanding, Plaintiff, reluctantly retired within the required time frame (10days).  As further evidence of that agreement the Defendant USPS made a payment of $4,500.00 into Plaintiff's account.

      35.     Despite that agreement, the Defendant then began the process of Removal in October 2006 and which plaintiff received in November 2006.

(Complaint at 9-10)

    Upon receipt of a Notice of Removal, indicating that plaintiff would be removed from the employ of the Postal Service as of October 11, 2005, plaintiff's union representative submitted a contractual grievance appealing her removal.  (See Defendant's Ex. 15 at ¶ 4)  The grievance was settled with the Postal Service agreeing to hold plaintiff's removal in abeyance as long as plaintiff applied for retirement within ten days.  Plaintiff also received compensation of $4,500.  (See Undisputed Fact #32, supra)  The Pre-Arbitration Settlement Agreement is signed by Jerome Barnes, the Postal Service's representative, and Melvin Hampton, the Union's representative.  (See Defendant's Ex. 15 at Attachment C)  Plaintiff was not a signatory to that settlement agreement.

Plaintiff failed to submit the retirement papers and was removed from Postal Service employment effective October 6, 2006. (See Undisputed Facts #33 and #34) Count IV alleges that defendant breached the settlement agreement by removing plaintiff from her employment. Plaintiff alleges defendant failed to provide her all the necessary forms for her to complete for her final retirement. (Doc. #1 at ¶ 33) Defendant contends that plaintiff did not complete the required paperwork.

Despite an apparent dispute over whether plaintiff was provided with the proper paperwork to fill out, defendant contends summary judgment should be granted on this claim as this Court lacks subject matter jurisdiction over this claim. Defendant contends that jurisdiction over a breach of contract action, if it existed at all, would be governed by provisions of the Postal Reorganization Act ("PRA"). In the PRA, Congress determined that Postal Service employee-management relations should be governed by and consistent with Subchapter II of Chapter 7 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 151, et seq., with only certain limited exceptions. The government claims that when a collective bargaining agreement establishes a mandatory grievance procedure and grants the union the right to pursue claims on behalf of an aggrieved employee, the results obtained by the union are normally conclusive of the employee's rights and subject to very limited judicial review. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163-64 (1983).

Thus, normally the aggrieved employee lacks independent standing to attack the results of the grievance process. If plaintiff is contending that the Union breached its duty of fair representation, which it does not appear she is, then plaintiff may bring her claim against both the Union and the Postal Service. See Del Costello, 462 U.S. at 164. However, even if plaintiff does not bring a claim against the Union, she must demonstrate a breach of duty by the Union for her suit to survive. Id. at 165. There is nothing before the Court which suggests plaintiff is claiming that the Union breached

its duty of fair representation. Thus, plaintiff cannot bring a breach of contract action against her employer for an agreement entered into between the employer and the Union.

Equally significant, the government suggests that no controversy exists over its failure to pay retirement benefits for the reason that "[i]f Ruiz files the paperwork and establishes that she is entitled to benefits she will receive them." (Doc. #14 at 28)

C.    HOSTILE WORK ENVIRONMENT – COUNT V[7]

In Count V, plaintiff alleges that:

> 38.    Plaintiff was wrongly punished, discriminated against, and subjected to a hostile work environment in retaliation for her efforts to deal with her disability and medical care and treatment; together with reporting the discriminatory conduct as she witnessed it.

> 39.    The people involved in creating the hostile work environment included Plaintiff's immediate supervisor, Denise Brownlee and Dennis Teffner, the director of human resources in Kansas City, Missouri. Additional employees (members of the management team as well) also participated in creating the hostile work environment from the time Plaintiff's job was reassigned and re-bid in 2005 to the present.

> 40.    Defendant USPS, acting through its agents, servants, employees, and directors, engaged in conduct designed to cause Plaintiff to leave.

(Doc. #1 at 10-11)

As previously noted, plaintiff is foreclosed from asserting claims not raised at the administrative level. It appears that plaintiff failed to raise a claim of retaliation through a hostile work environment when she filed her administrative charge. See Coleman-Adebayo v. Leavitt, 400 F.Supp.2d 257, 260-61 (D.D.C. 2005)(retaliation claims properly dismissed where plaintiff failed to exhaust administrative remedies). Thus, neither claim is viable. In addition, plaintiff seems to suggest

---

[7]Plaintiff refers to the last count of her Complaint as "Count II–Unlawful Discrimination by Defendant Creating a Hostile Work Environment." The Court has referred to this as Count V throughout this discussion.

23

that the hostile work environment existed from the time plaintiff's job was reassigned. However, it is undisputed that after her job was relocated to 1700 Cleveland, plaintiff did not appear for work. (See Undisputed Facts #9 and #31) Thus, it does not appear that plaintiff could establish the elements of a hostile work environment which would require evidence of unwelcome harassment affecting a term, condition or privilege of her employment. See Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005).

Any claim of retaliation would fail on the merits as well. To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. See Shanklin v. Fitzgerald, 397 F.3d 596, 603 (8th Cir.), cert. denied, 546 U.S. 1066 (2005). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. Id. If the defendant makes this showing, then the plaintiff must demonstrate that the defendant's proffered reason was a pretext for illegal retaliation. Id. at 603-04.

Even assuming that plaintiff Ruiz engaged in a protected activity, as discussed previously, plaintiff did not suffer an adverse employment action when her job was moved to 1700 Cleveland. Further, if plaintiff is alleging that her failure to be awarded bid job number 8731680 was retaliatory, defendant has articulated a legitimate nondiscriminatory reason for awarding the position at the main post office to someone other than plaintiff. Therefore, plaintiff cannot successfully pursue a claim of retaliation.

V.  CONCLUSION

For the reasons set forth herein, it is

24

ORDERED that Counts I and II of plaintiff's Complaint are dismissed.  It is further

ORDERED that Defendant's Motion for Summary Judgment (doc. #14) and Defendant's

Amended Motion for Summary Judgment (doc. #25) are granted as to Counts III, IV and V.


_____*/s/ Sarah W. Hays*_____
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE